# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNA R. CHAPARRO,<br><br>         Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>         Defendant.<br>_____ | 1:09-cv-2250 SKO<br><br>**ORDER REGARDING PLAINTIFF'S**<br>**SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1973 and has a high-school education but no past relevant work. (Administrative Record ("AR") 19, 286, 312-13.) On July 27, 2005, Plaintiff filed an application for SSI, alleging disability beginning on September 1, 2004, due to back and leg pain, anxiety, and memory loss. (AR 84-92, 96.)

**A.     Medical Evidence**

   **1.     Dr. Hirokawa**

On October 1, 2005, Greg Hirokawa, M.D., completed a consultative psychiatric evaluation of Plaintiff. (AR 216-20.) Dr. Hirokawa diagnosed Plaintiff with generalized anxiety disorder and depressive disorder not otherwise specified, and assigned a GAF score of 55.[2] (AR 219.) Dr. Hirokawa noted that Plaintiff's "symptoms and severity of depression are within the mild range. The likelihood of [Plaintiff's] mental condition improving within the next 12 months is fair." (AR 219.)

Dr. Hirokawa's functional assessment of Plaintiff was as follows:

[Plaintiff] is capable of managing her funds based upon her ability to perform simple calculations.

[Plaintiff's] ability to carry out very short and simple instructions is fair.

[Plaintiff's] ability to understand and remember detailed instructions is fair.

[Plaintiff's] ability to maintain attention and concentration is fair. [Plaintiff's] ability to accept instructions from supervisors is fair.

[Plaintiff's] ability to sustain an ordinary routine without special supervision is fair.

[Plaintiff's] ability to complete a normal workday and workweek without interruption at a consistent pace is fair.

[Plaintiff's] ability to interact with coworkers is fair.

[Plaintiff] will probably experience panic attacks and anxiety when under stress. This may be an emotional problem encountered at work. [Plaintiff's] ability to deal

---

[2] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34.

>with various changes in a work setting is fair. The likelihood of [Plaintiff] emotionally deteriorating in a work environment is moderate.
>
>[Plaintiff] will benefit from counseling and a psychiatric medication evaluation for anxiety.

(AR 219-20.)

### 2. Dr. Nowlan

On October 22, 2005, James Nowlan, Jr., M.D., an internist, performed a consultative examination of Plaintiff and diagnosed her with chronic pain syndrome. (AR 226.) Dr. Nowlan opined that Plaintiff (1) could lift 40 pounds occasionally and 10 pounds frequently, (2) could stand and walk for eight hours in an eight-hour workday, and (3) could sit for an unlimited amount of time. (AR 226.) Further, Plaintiff did not need any assistive devices and had no postural or manipulative limitations. (AR 226.) Finally, Dr. Nowlan opined that Plaintiff's limitations were psychiatric in nature. (AR 227.)

### 3. State Agency Physicians

On October 28, 2005, Archimedes Garcia, M.D., a state agency psychiatrist, completed a psychiatric review technique form in which Dr. Garcia opined that Plaintiff's anxiety-related disorder was not a severe impairment. Another state agency psychiatrist, Glenn Ikawa, M.D., affirmed Dr. Garcia's assessment on March 3, 2006. (AR 221.)

On November 9, 2005, Sadda Reddy, M.D., a state agency medical consultant, determined that Plaintiff's physical impairments were not severe. (AR 228-29.)

## B. Administrative Hearing

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 21-49.) On November 3, 2006, ALJ Christopher Larsen held a hearing where Plaintiff and a vocational expert ("VE") testified. (AR 279-317.)

### 1. Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in his decision as follows:

> [Plaintiff] testified she lives with her three children, ages 5, 7, and 12, and with her domestic partner. She testified she has a driver's license and drives as needed to shop for groceries and take her children to school. [Plaintiff] stated she has back pain and symptoms of anxiety, and experiences anxiety attacks in public and at home, even when washing the dishes. She reported frequent anxiety attacks at work when she worked as a telemarketer. She testified her anxiety attacks last a few minutes, but avers she must lie down as often as 7 times a day to recover from them. She testified her back pain rates "8" on the scale of "1-10," even with medication. She stated she can sit for 30 minutes, stand 10-15 minutes, and walk 1 block; that these limitations result from back and leg pain and from her anxiety; and that she is able to concentrate for only 30 minutes at a time. During the day she does some housework and watches television, but must rest frequently. She cooks and does laundry occasionally, and is able to dress herself and care for her personal needs.

(AR 18.)

### 2. Vocational Expert Testimony

The VE testified that a hypothetical person of Plaintiff's age, education, and work experience who had to avoid contact with the general public could perform work in the national economy. (AR 313.) Jobs available to this hypothetical person would be reduced by 75% at the light occupational base and by about 50% at the sedentary, medium, and heavy occupational bases. (AR 313-14.) Further, there were 81,000 jobs in California for such a hypothetical person who could perform unskilled, sedentary work. (AR 314.)

### C. ALJ's Decision

On January 24, 2007, the ALJ issued a decision finding Plaintiff not disabled since the application date of July 27, 2005. (AR 11-20.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of September 1, 2004; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform jobs that existed in the national economy. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work without exertional limitations and to

understand, remember, and carry out the steps of unskilled work, but she was to avoid frequent contact with the general public. (AR 16.) In evaluating the evidence about Plaintiff's mental condition, the ALJ gave "substantial weight" to Dr. Hirokawa's opinion that Plaintiff's "anxiety and depression would impose some limitations." (AR 17.) The ALJ rejected "the opinion of the state-agency analyst and reviewing psychiatrist that [Plaintiff's] mental impairment was non-severe, because it is contradicted by an examining source." (AR 17.)

Plaintiff sought review of this decision before the Appeals Council. On October 30, 2009, the Appeals Council denied review. (AR 4-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**D.    Plaintiff's Appeal**

On December 28, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ improperly considered Dr. Hirokawa's opinion.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC[3] despite the impairment or various limitations to perform his past work. *Id.*

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and

§§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Consideration of Dr. Hirokawa's Opinion**

In determining Plaintiff's mental RFC, the ALJ found that Plaintiff could understand, remember, and carry out the steps of unskilled work but had to avoid frequent contact with the general public. (AR 16.) The ALJ gave "substantial weight" to Dr. Hirokawa's opinion that Plaintiff's anxiety and depression would impose "some limitations." (AR 17.) Plaintiff maintains that, although the ALJ gave substantial weight to Dr. Hirokawa's opinion, the ALJ ignored the doctor's findings that Plaintiff has only a fair ability to carry out simple and detailed instructions, maintain attention and concentration, accept instructions, sustain an ordinary routine, complete a normal workday, and to interact with coworkers. According to Plaintiff, the ALJ erred in failing to state specific and legitimate reasons for rejecting these portions of Dr. Hirokawa's opinion and, therefore, in finding that Plaintiff had an RFC for work not involving frequent contact with the public.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

7

claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**2.    Analysis**

Plaintiff's medical record contained two functional assessments of Plaintiff's mental RFC. The ALJ rejected the state agency physician's opinion, who found that Plaintiff did not have a severe mental impairment, in favor of the findings of consultative examiner Dr. Hirokawa. (AR 17.)

Plaintiff argues that, despite giving significant weight to Dr. Hirokawa's opinion, the ALJ improperly ignored the doctor's opinion about Plaintiff's mental limitations. Specifically, Plaintiff points to Dr. Hirokawa's finding that Plaintiff had a "fair" ability to, among other things, (1) understand and remember simple or detailed instructions; (2) accept instructions from supervisors; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace. (AR 219-20.) According to Plaintiff, the ALJ did not state specific and legitimate reasons for rejecting Dr. Hirokawa's opinion regarding these limitations.

The Court agrees that the ALJ erred by not explaining why he rejected the above limitations where Dr. Hirokawa was the only psychiatric examining source and the only one to set forth specific mental limitations. Although the ALJ gave "significant weight" to Dr. Hirokawa's opinion that Plaintiff's mental impairments "would impose some limitations," the ALJ only incorporated into the

RFC finding that Plaintiff should be precluded from interacting with the general public. For example, the ALJ did not include a limitation to simple tasks in assessing Plaintiff's RFC, even though Dr. Hirokawa found that Plaintiff's ability to carry out very short and simple instructions was fair. Further, Dr. Hirokawa found Plaintiff to be fairly limited in her ability to interact with coworkers, yet the ALJ included in his RFC assessment only a limitation in Plaintiff's contact with the public.

Defendant maintains that the ALJ considered Dr. Hirokawa's opinion by finding that Plaintiff had severe mental impairments at the Second Step of the sequential evaluation process, giving Plaintiff "the benefit of the doubt," despite the opinion of two state agency physicians to the contrary. According to Defendant, the ALJ's RFC finding was consistent with Dr. Hirokawa's report. In determining Plaintiff's mental RFC, however, the ALJ here simply failed to discuss why he rejected certain limitations imposed by the only psychiatric examining source. An ALJ need not discuss all evidence presented to him, but he must explain why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). Here, the functional limitations that the ALJ did not discuss, including Plaintiff's "fair" ability to (1) understand and remember simple or detailed instructions; (2) accept instructions from supervisors; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace, were both significant and probative. The ALJ's failure to explain his treatment of certain limitations imposed by Dr. Hirokawa renders his analysis of the medical evidence, as well as the RFC finding, unsupported by substantial evidence. *See Rivera v. Astrue*, No. 1:09cv01971 DLB, 2010 WL 3825689, at *6-7 (E.D. Cal. Sept. 28, 2010) (remanding case for ALJ to explain treatment of certain limitations imposed by examining psychiatrist, including claimant's "fair" ability to (1) understand, remember, and carry detailed instructions; (2) accept instructions from a supervisor and respond appropriately to criticism; and (3) complete a normal workday and workweek without interruptions from psychologically based

symptoms and perform at a consistent pace; ALJ had given psychiatrist's opinion "significant weight," yet incorporated portion of only one limitation into RFC finding).

**B.     Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court finds that remand for further proceedings is appropriate. On remand, the ALJ must explain why he rejected the additional limitations imposed by Dr. Hirokawa or alter the RFC accordingly.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Janna R. Chaparro and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:     January 24, 2011**                         /s/ Sheila K. Oberto
                                                         UNITED STATES MAGISTRATE JUDGE